UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARNELL THOMAS-el, | ) | |
| Plaintiff, | ) ) ) | Case No. 12 C 5348 |
| v. | ) ) | Judge Robert W. Gettleman |
| OFFICER SPEARS, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Darnell Thomas-el, filed suit, *pro se*, against Cook County Correctional Officer Spears and Nurse Humphries. Plaintiff alleges that defendant Spears subjected him to deliberate indifference to a substantial risk of serious harm on December 20, 2011, while he was incarcerated at the Cook County Jail. He alleges that other prisoners attacked him and that defendant Spears could have prevented the attack. He alleges that he was stabbed several times in the attack and suffered injuries. Plaintiff further alleges that defendant Humphries subjected him to deliberate indifference to a serious medical condition in her treatment of his resulting wounds.

Presently pending before the court is defendants' motion for summary judgment [#30]. Defendants argue in their motion that plaintiff has failed to exhaust his administrative remedies prior to filing suit, and failed to establish deliberate indifference. For the reasons stated herein, the defendants' motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the

nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

When defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982), and Local Rule 56.2. This notice clearly set out the requirements of this court's Local Rule 56.1. In particular, the notice explains that plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to file:

> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance

with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Despite being given the L.R. 56.2 notice, plaintiff failed to respond to defendants' Rule 56.1 statement of facts. Consequently, defendants' facts contained in their Rule 56.1 statement, to the extent that they are material, adequately supported by the record, and not controverted by evidence in the record, are deemed admitted.

## FACTS

Plaintiff alleges that on December 20, 2011, prisoners attacked him while he was a pre-trial detainee at the Cook County Department of Corrections ("CCDOC"). Plaintiff alleges that Officer Spears, a deck officer in plaintiff's CCDOC living unit, could have prevented the attack, and that Officer Spears failed to protect him, acting with deliberate indifference to a substantial risk of serious harm. Plaintiff also alleges that after he was attacked, he was taken to the dispensary health unit where Nurse Humphries acted with deliberate indifference to his serious medical condition in treating the injuries he sustained during the attack.

On December 20, 2011, plaintiff was assigned to Division 9, Tier 3D of the Cook County Jail. Division 9, Tier 3D has 22 inmate cells – 11 cells on each of the lower and 11 top levels. On the lower level of Division 9, tier 3D, there is a common area with tables and chairs. Plaintiff was assigned to one of the cells on the lower level of tier 3D. Inmates on tier 3D receive three hours a day outside of their cells – one and a half hours in the morning and one and a half hours in the afternoon.

On December 20, 2011, plaintiff exited his cell during the morning to spend some time outside of his cell. Once outside of his cell, plaintiff went to the second level of tier 3D and had a conversation with another inmate who was restricted to his particular cell. While standing at

3

the other inmate's door, plaintiff noticed that there was a commotion downstairs in the common area of the tier. After plaintiff noticed the commotion, plaintiff went downstairs and got between two fellow inmates to make sure those inmates did not get into a fight. Plaintiff did not know the inmates he was trying to prevent from getting into a fight, but stepped in because he wanted to prevent the tier from going on lockdown.

Plaintiff got along with all of the other inmates on Tier 3D, and did not have any enemies on the tier. Although plaintiff initially tried to defuse the situation in the common area, a fight occurred between two other inmates.

Correctional officers entered the common area and the fight stopped. Officer Spears was not one of the correctional officers who was working when that fight occurred on the tier. After correctional officers entered the common area to stop the fight, plaintiff's section of the tier – known as the "Bottom 5 Wall" was placed on lockdown and all inmates went back into their cells. Other sections of the tier continued to be let out in the normal rotation, but plaintiff's section remained on lockdown until the end of the shift.

While plaintiff was locked in his cell, he heard other inmates stating, "the deck is going up," which he understood to mean that people were going to fight again. As plaintiff listened to the chatter on the tier, he never heard threats specific to his safety, and no threats ever referenced his name or identity. Other prisoners never threatened him by name, but plaintiff believed that what the prisoners were yelling out of their cells constituted "subliminal messages" that plaintiff took as threats.

Plaintiff was allowed to leave his cell during the evening hours of December 20, 2011, after there had been a shift change for the correctional officers. Officer Spears was the new correctional officer on tier 3D after the shift change, and plaintiff knew Officer Spears from prior encounters. Plaintiff had no prior issues with Officer Spears and got along with him.

Plaintiff had a conversation with Officer Spears and told him that he could feel "tension on the deck." However, plaintiff did not know of any threat specific to him and only felt a general tension. Plaintiff did not tell Officer Spears about any threat to his safety. Plaintiff did not direct Officer Spears to specific cells or specific inmates who may have been seeking to harm him. During plaintiff's conversation with Officer Spears, plaintiff did not ask Officer Spears to place him in protective custody. Although plaintiff felt a general threat on the tier, he was not so concerned about his safety as to request placement in protective custody.

Shortly after plaintiff had a conversation with Officer Spears, three or four other prisoners approached plaintiff and spoke to him about the incident that occurred earlier on the tier. Plaintiff's encounter with these other inmates occurred in the main common area, near the television. One of the men plaintiff was talking to, Nicholas Birch, was a person plaintiff thought to be aggressive, and a potential threat to him. Although plaintiff knew Nicholas Birch to be aggressive, his aggression had never been directed at plaintiff. Plaintiff never told Officer Spears that Nicholas Birch was a threat to his physical safety.

As plaintiff walked away from his conversation with the other inmates, an inmate began stabbing him. Plaintiff could not tell who was stabbing him, but could see Nicholas Birch's face during the incident. Multiple inmates began fighting at that time in the common area of the tier. Plaintiff could tell that multiple people were fighting, but he was primarily fighting with Nicholas Birch. After plaintiff was stabbed, he ran away from the fight.

Officer Spears saw the commotion in the dayroom and called for a "10-10," which is a call for a fight in progress on the tier. After a call of a "10-10," a tier officer cannot enter the tier without having backup officers and a supervisor present. Plaintiff was aware that when an inmate fight involves the use of weapons, officers enter only when a supervisor is present. There were multiple weapons recovered from Tier 3D after the fight.

Once backup officers and a supervisor were present at Tier 3D, Officer Spears, his supervisor and those backup officers entered into the day room and started to break up the fight. Officer Spears, his backup officers and supervisor entered the day room within minutes of the fight breaking out.

Plaintiff sustained three stab wounds as a result of the incident. One was a one-eighth centimeter laceration to the left side of his chest. Another was a one-half centimeter laceration to the right side of his face. The third was a small wound to the top of his head.

Plaintiff was taken to see Nurse Humphries to address the injuries he sustained in the altercation within thirty to sixty minutes after the incident. Nurse Humphries treated plaintiff's injuries by cleansing the lacerations and closing them with DermaBond and Steri-Strips. Plaintiff never had any complications with his wounds after Nurse Humphries treated them. Plaintiff was referred to Cermak Health Services for x-rays and a CT scan within one to two days after the incident.

The CCDOC "Detainee Grievance Procedure" General Order (G.O.) 14.5 governs the administrative grievance process, and the "Detainee Grievance Procedure" was available to all inmates in 2011 and 2012. Plaintiff has been in custody at CCDOC continuously since June 28, 2010. Plaintiff was familiar with the CCDOC grievance process. Under G.O. 14.5, all grievances must be filed within fifteen days after the alleged grievable incident has occurred. Detainees are required to file a grievance and exhaust all administrative remedies prior to filing a related lawsuit; filing an appeal of a grievance response is required to exhaust a detainee's administrative remedies.

Plaintiff filed grievance 2011 X 4648 on December 28, 2011. Grievance 2011 X 4648 did not specifically address any action taken or not taken by Officer Spears, but described the

incident that occurred on December 20, 2011, during which Plaintiff suffered multiple stab wounds, and alleged deliberate indifference to a serious medical condition.

On February 7, 2012, plaintiff filed two grievances with his Correctional Rehabilitation Worker ("CRW") regarding the alleged physical assault of December 20, 2011. Those grievances were given control numbers 2012 X 1584 and 2012 X 1588, respectively. Grievance number 2012 X 1584 and Grievance number 2012 X 1588 address only Plaintiff's allegation of deliberate indifference to a serious medical condition, relating to the delay in treatment for his wounds after the incident on December 20, 2011.

## DISCUSSION

### A. Failure to Exhaust Administrative Remedies.

Initially, defendants argue in their motion for summary judgment that plaintiff failed to exhaust administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 531 U.S. 956 (2001). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

An inmate must comply with the rules established by the State [or, in this case, county] with respect to the form and timeliness of grievances. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed

to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court).

To exhaust remedies under § 1997e(a), a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999) ("[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).

Defendants argue in their motion not that plaintiff failed to submit or appeal grievances, but that plaintiff failed to exhaust his administrative remedies because he did not address any action taken, or not taken, by defendants Spears and Humphries in the three grievances he filed regarding the December 20, 2011, incident. To the extent defendants are arguing that plaintiff failed to exhaust because he did not name defendants in the grievances, their argument fails.

The Seventh Circuit has held that despite the administrative rule requiring a prisoner to name persons involved in the complaint, a prisoner has exhausted so long as the grievance places the state on notice of the need for corrective action. *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011); *see also Young v. Wexford Health Sources,* Case No. 10 C 8220, 2012 U.S. Dist. LEXIS 17416 at **25-27 (N.D. Ill February 14, 2102) (Pallmeyer, J.). The *Maddox* court held that "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox*, 655 F.3d, at 722 (*citing Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005); *Riccardo v. Rausch*,

375 F.3d 521, 524 (7th Cir. 2004); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004)). Significantly, the court pointed out that "providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement" *Id.* (*citing Jones v. Bock*, 549 U.S. 199, 219 (2007); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

A review of the three grievances submitted by defendants with their motion indicates that plaintiff alleged that it took too long to control the altercation in which plaintiff was stabbed, and that there was a delay in providing medical care to plaintiff. The grievances also raise claims of excessive force, but no such claim was raised in plaintiff's complaint However, the court finds, based on the substance of the grievances, that plaintiff sufficiently placed the jail on notice of the need for corrective action relating to his safety during the incident and the alleged delay in the provision of medical care. Accordingly, because the record indicates that plaintiff adequately exhausted his administrative remedies regarding his claims, the court denies defendants' motion in this regard.

**B.   Plaintiff has not Established a Failure to Protect Claim against Officer Spears.**

However, with respect to defendants' arguments regarding deliberate indifference, they are more successful. The Eighth Amendment, as applied to the various states through the Fourteenth Amendment, requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). "While prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury within a prison is an Eighth Amendment violation." *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). Because plaintiff was a pre-trial detainee at the time of his injuries, his § 1983 claim is analyzed not under the Eighth Amendment but under the Due Process Clause of the Fourteenth Amendment. *See Butera v.*

*Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). However, the Eighth Amendment deliberate indifference standard applies with as much force in cases involving pre-trial detainees. *Estate of Cole v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996); *Salazar v. City of Chi.*, 940 F.2d 233, 237-41 (7th Cir. 1991).

To prove a failure to protect claim, a plaintiff must establish that: (1) he faced a substantial risk of serious injury, and (2) the defendant acted with deliberate indifference to that risk. *Farmer*, 511 U.S. at 834; *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Mere negligence is insufficient. *Farmer*, 511 U.S. at 835. The officer must have actually known of a substantial risk of harm to the plaintiff's safety, yet failed to take appropriate steps to protect him from the specific danger. *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). In other words, knowledge of only a general risk of violence is insufficient. *Id.*; *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005); *Brown*, 398 F.3d at 909. A failure-to-protect claim usually requires proof that the officer knew of a risk of violence specific to the inmate. *See Fisher*, 414 F.3d at 664; *Butera*, 285 F.3d at 607.

The record indicates that plaintiff never told defendant Spears that he was in fear for his safety, that he had been threatened, or that he believed he would be attacked. Plaintiff merely described to Spears a general sense of unease at the level of tension on the tier. He did not ask for protective custody, nor did he identify specific inmates whom he believed wished to do him harm. Based on the evidence in the record, the court finds that no reasonable jury could find that Spears was on sufficient notice to a substantial risk of serious harm to plaintiff.

To the extent that plaintiff's claim is that Spears failed to intervene once the fight began, correctional officers are not required to put themselves at risk by breaking up a fight between inmates armed with weapons. *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002) (*citing MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (failing to intervene between inmates

fighting with weapons does not constitute deliberate indifference)); *Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) (if intervening in a prison fight could cause serious injury, guards have no duty to do so as a matter of law).

The record establishes that when Spears became aware of the disturbance, he followed protocol, calling a "10-10". Once a "10-10" is called, an officer may not enter the tier without back-up officers and a supervisor present. Additionally, if an officer becomes aware that the fight involves the use of weapons, an officer must wait for back-up and a supervisor, to intervene. Once back-up officers and his supervising officer arrived, within minutes of the start of the altercation, Spears entered the dayroom where the fight occurred and they collectively restored order. Multiple weapons were recovered in the aftermath of the altercation.

The actions taken by Spears when the fight broke out belie any inference of deliberate indifference. He took appropriate steps once the fight broke out, and was not constitutionally required to confront a large group of inmates in the throes of a violent attack; indeed, doing so would have been contrary to express jail policy. Consequently, plaintiff's deliberate indifference claim against Spears based on failure to intervene fails. Because the record establishes that Spears had insufficient knowledge of a specific threat of substantial harm to plaintiff prior to the fight, and Spears acted reasonably and according to protocol during the incident, the court grants Spears judgment on plaintiff's claim of deliberate indifference to a substantial risk of serious harm against him.

    **C.**    **Plaintiff has not Established Deliberate Indifference regarding the Medical Care Provided by Nurse Humphries.**

Plaintiff has also failed to establish medical deliberate indifference on the part of Nurse Humphries. Pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment. *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Claims of deliberate indifference to a serious medical need of a pretrial detainee under the Fourteenth

Amendment uses the same standard for deliberate indifference to a serious medical need under the Eighth Amendment. *See Williams*, 509 F.3d at 401. A claim of deliberate indifference includes both an objective and subjective element. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not actionable under 42 U.S.C. § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Further, medical negligence is insufficient to demonstrate deliberate indifference. *See Foelker v. Outagamie County*, 394 F.3d 510, 13 (7th Cir. 2005). However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *See Walker*, 293 F.3d at 1037. The court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997).

The record establishes that plaintiff sustained three relatively minor stab wounds as a result of the fight with other prisoners on December 20, 2011. Plaintiff's wounds included: 1) a

one-eighth of a centimeter laceration to the left side of his chest; 2) a one-half centimeter laceration to the right side of his face; and 3) a small wound to the top of his head. As a result of the wounds, and within thirty to sixty minutes after the fight, Plaintiff was sent to Cermak Health Services, where Nurse Humphries treated him.

Defendants argue in their motion for summary judgment that plaintiff's injuries were not objectively serious. A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed. *Foelker*, 394 F.3d at 512-13; *Edwards v. Snyder*, 478 F.3d 827, 830 831 (7th Cir. 2007). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (*citing Gutierrez*, 111 F.3d at 1373). Plaintiff's injuries were arguably serious, considering they were stab wounds, and required immediate care. Plaintiff received medical care within an hour of the altercation, and was sent to Cermak Health Services again two days later for x-rays and a CT scan. Accordingly, the court finds that the record establishes questions of fact as to whether plaintiff's injuries were objectively serious.

However, there is nothing in the record to establish that Nurse Humphries acted with criminal recklessness in her treatment of plaintiff's wounds. She cleaned plaintiff's wounds, and closed them using Derma-Bond and Steri-Strips. Plaintiff had no complications after he was treated by Nurse Humphries, and as previously stated received follow-up care two days later. Plaintiff is apparently of the opinion that in lieu of DermaBond and Steri-Strips, Nurse Humphries should have closed his wounds with stitches. However, neither an incorrect diagnosis nor a disagreement about the proper course of treatment alone is sufficient to show deliberate indifference. *See Chambers v. Mitcheff*, 2013 U.S. App. LEXIS 370 *14 (7th Cir.

January 7, 2013) (unpublished); *citing McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010); *Norfleet*, 439 F.3d at 396.

To the extent that plaintiff's medical deliberate indifference claim rests on a "delay" in treatment, his claim fails. The court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker*, 233 F.3d at 501; *Gutierrez*, 111 F.3d at 1374-75. As previously discussed, plaintiff received medical care within an hour of being injured. His wounds were cleaned and closed and he was referred to Cermak Health Services for follow-up treatment two days later for x-rays and a CT scan. No reasonable jury could find any delay sufficient to establish deliberate indifference. Consequently, plaintiff's claim for medical indifference fails.

**D. Official Capacity Claims.**

Defendants argue in their motion for summary judgment that any official capacity claims against them fail. In its order of August 3, 2012, the court dismissed the official capacity claims against defendant Cook County, holding that plaintiff had failed to adequately plead a custom or policy to state a claim against the County [#4]. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012). To the extent that plaintiff alleged an official capacity claim against defendants Spears and Humphries, the record contains no evidence that they created, condoned or approved a custom, policy or practice that effectively caused or condoned the alleged constitutional violation. *See, e.g., Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999); *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006); *Monell*, 436 U.S. at 694. Plaintiff's official capacity claims fail, and judgment is granted to defendants.

## CONCLUSION

For the foregoing reasons, defendants Spears and Humphries' motion for summary judgment [#30] is granted. The Clerk is directed to enter judgment in favor of defendants pursuant to FED. R. CIV. P. 56. The case is terminated.

Dated: November 13, 2013

Robert W. Gettleman
U.S. District Court Judge